IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| SHANE MCCLANAHAN, | CV 22–20–H–BMM |
| Plaintiff, | |
| vs. | ORDER |
| JIM SALMONSEN, | |
| Defendant. | |

Plaintiff Shane McClanahan is an inmate at Montana State Prison ("MSP") who has been diagnosed with melanoma. McClanahan alleges that Defendant Warden Jim Salmonsen is preventing prison medical staff from providing him with adequate care in violation of the Eighth Amendment and 42 U.S.C. § 1983. (*See* Doc. 44.) Warden Salmonsen seeks summary judgment, on the basis that no constitutional violation has occurred because McClanahan's medical needs are being met. (*See* Doc. 88.) The undisputed facts show that McClanahan's medical care at MSP is sufficient. Warden Salmonsen's motion is granted.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome

1

of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto v. Sweetman*, 882 F.3d 865, 870–72 (9th Cir. 2018) (explaining that while pro se parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance," such as the requirement to identify or submit competent evidence in support of their claims).[1]

## BACKGROUND[2]

McClanahan was diagnosed with melanoma in 2016 while incarcerated at the Utah State Prison. (Doc. 89 at ¶¶ 2–3.) Medical officials discovered a melanoma on McClanahan's back upon his initial intake and the cancerous tissue was surgically removed. (*Id.*) McClanahan was transferred back to MSP on December 21, 2018. (Doc. 44 at 16.) McClanahan filed this action in February

---

[1] Attached to Salmonsen's motion was the requisite *Rand* Notice. (*See* Doc. 90).
[2] The facts are undisputed unless otherwise noted, (*see* Docs. 89, 92), and viewed in the light most favorable to McClanahan, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

2022, alleging civil rights violations under 42 U.S.C. § 1983.  McClanahan filed an

amended complaint on March 3, 2022, (Doc. 4), and a supplement on March 18,

2022, (Doc. 11).  McClanahan then filed a second amended complaint on

December 13, 2022, (Doc. 44), and a supplement on January 6, 2023, (Doc. 46).

McClanahan generally alleges that his cancer "has spread further without any care

from M.S.P. since bringing [him] back" to Montana in 2018.  (Doc. 44 at 16.)

### ANALYSIS

Warden Salmonsen asserts that he is entitled to summary judgment on the

ground that no constitutional violation occurred because McClanahan is receiving

proper medical care. Alternatively, Warden Salmonsen argues he is entitled to

qualified immunity because no reasonable official could know that MSP's

approach to monitoring a prison inmate's cancer while it is in remission would

violate the inmate's Eighth Amendment rights. Warden Salmonsen's first

argument has merit. Summary judgment is granted in his favor.

### A.    Medical Care

The undisputed factual record shows that McClanahan is receiving

constitutionally adequate medical care.  "The government has an obligation to

provide medical care for those whom it is punishing by incarceration, and failure to

meet that obligation can constitute an Eighth Amendment violation cognizable

under § 1983." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).  To

prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This two-part inquiry includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

"Deliberate indifference is a high legal standard. . . . To show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (internal quotation marks and citation omitted). "[A]n inadvertent failure to provide adequate medical care, differences of opinion in medical treatment, and harmless delays in treatment are not enough to sustain an Eighth Amendment claim." *Simmons v. G. Arnett*, No. 20-55043, 2022 WL 3906207, at *5 (9th Cir. Aug. 31, 2022).

McClanahan asserts that his cancer has spread "without any care" or intervention from MSP officials since December of 2018. (Doc. 44 at 16–17.) Specifically, he alleges he has been denied treatment by a "cancer specialist" for his serious medical needs while at MSP. (*Id*. at 18.) Although McClanahan claims

that he has been denied access to specialists and that treatments have been delayed, McClanahan also acknowledges that he has undergone regular physicals and full image CT scans at the direction of "attentive" MSP medical staff.  (*See* Doc. 46-1 at 6, 8.)  Consistently, the undisputed record shows that because of McClanahan receives regular cancer screenings, due to his history of melanoma. (Doc. 89, at ¶ 4), including full-body examinations and CT or PET scans, (*id*. ¶ 13).  On April 29, 2019, April 12, 2021, June 11, 2021, and January 12, 2022, MSP physician Dr. Paul Rees, M.D., gave McClanahan full-body examinations, finding no indications of metastasizing melanoma.  (*Id*. ¶¶ 5, 6, 8, 9.)  On April 23, 2021, McClanahan underwent two CT scans: the first was a scan of his chest, abdomen, and pelvis, which revealed no evidence of metastatic disease of these areas; and the second was a scan of his head, which was normal.  (*Id*. ¶ 7.)

McClanahan underwent another CT scan of his neck, chest, abdomen, and pelvis on March 7, 2022. (*Id*. ¶ 10.)  This scan did not reveal metastatic disease, but the radiologist who performed the exam, Dr. Steven A. Larsen, M.D., suggested that a PET scan would provide a more sensitive detection of melanomas metastatic disease.  (*Id*.)  Dr. Rees shared the results of the scan with McClanahan on March 28, 2022.  (*Id*.)  On August 2, 2022, McClanahan presented with new black lesions on his scrotum.  (*Id*. ¶ 11.)  Based on his history of melanoma, Dr. Rees examined the area and recommended a biopsy of the largest black lesion.

(*Id*.)  On September 13, 2022, McClanahan presented with several pigmented lesions on his penis, to which Dr. Rees planned excisional biopsies of each, but McClanahan refused excision and biopsy.  (*Id*. ¶¶ 12–13.)

Four months later, on January 3, 2023, McClanahan consented to the excisional biopsy of the lesions on his penis and scrotum.  (*Id*. ¶ 14.)  Dr. Rees performed the procedure and submitted the specimens to pathology.  (*Id*.)  On January 12, 2023, McClanahan underwent a PET/CT scan from the base of his skull to the mid thighs, as Dr. Larsen had suggested.  (*Id*. ¶ 15.)  The scan revealed "mild focally increased uptake within the ventral surface of the mid-penile shaft without a definite CT correlate."  (*Id*.)  Dr. Rees attributed the uptake to evidence of healing in the area of the recent excisional biopsy, not metastatic disease.  (*Id*. ¶¶ 15–16.)  Later that day, Dr. Rees received the results from the excisional biopsy, which diagnosed the issue as melanocytic nevus, a benign condition commonly known as a mole, confirming Dr. Rees's opinion that the uptake indicated healing was taking place.  (*Id*. ¶ 17.)

Dr. Rees gave McClanahan a full-body examination on February 14, 2023, that indicated no metastasizing melanoma.  (*Id*. ¶ 18.)  On October 26, 2023, Dr. Rees gave McClanahan a full body examination, which revealed no indications of metastasizing melanoma, but noted a pigmented lesion on the ventral side of McClanahan's penis.  (*Id*. ¶ 19.)  The following day, Dr. Rees excised the lesion

from McClanahan's penis and sent the excised specimen for biopsy.  (*Id*. ¶¶ 19–20.)  The pathology report indicated the lesion was benign with no melanoma recurrence identified.  (*Id*.)  Dr. Rees informed McClanahan of the results of the pathology report on November 28, 2023.  (*Id*. ¶ 21.)

Assuming that melanoma in remission, in fact, constitutes a serious medical need, in response to the record of treatment described above, McClanahan has not presented any evidence that the facility's medical care was deficient.  *See von Koenigsberg-Tyrvaldssen v. Kohut*, 2017 U.S. Dist. LEXIS 36405, at *19–22 (D. Mont. 2017) (ongoing monitoring of cancer-in-remission constitutes adequate medical care). McClanahan argues that Warden Salmonsen has still not provided "medical records from MSP from 2015 and 2016 that proved deliberate indifference among other violations." (Doc. 92 at 2–11.) McClanahan complains that Warden Salmonsen has "prolonged this matter of justice in moving for 1/2 a dozen bogus summaries for dismissals against" him, and alleges that Dr. Rees, "M.S.P.'s chosen friend of defendants," is complicit. (*Id*.)  These baseless accusations fail to demonstrate the existence of a factual dispute regarding the sufficiency of the medical care that McClanahan has received from MSP since his melanoma diagnosis in 2016.  *See Soto*, 882 F.3d at 870 (on summary judgment, even pro se parties must identify or submit competent evidence in support of their claims).  No evidence indicates that McClanahan is receiving inadequate medical

care at MSP. No trier of fact could reasonably find for McClanahan. Summary judgment is granted in favor of Warden Salmonsen.

### B.    Supervisory Liability

Even if McClanahan was receiving constitutionally deficient medical care from MSP providers, there is likewise no evidence that Warden Salmonsen personally participated in or directed any action or inaction that caused the alleged deficient care.  Supervisory officials can only be held liable under section 1983 if they themselves personally violated a constitutional right.  *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009).  "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others."  *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (internal quotation marks omitted). Thus, "[i]n a section 1983 claim, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them."  *Id.* (internal quotation marks omitted).  "The requisite causal connection may be established when an official sets in motion a series of acts by others which the actor knows or

reasonably should know would cause others to inflict constitutional harms." *Id.*
(internal quotation marks omitted).

McClanahan seems to allege that Warden Salmonsen knew that his
condition warranted intervention by a "cancer specialist," but nevertheless denied
and delayed that care. (*See* Doc. 44 at 22–25.) In support of his claim,
McClanahan asserts that in January of 2022, he met with Warden Salmonsen about
the prison's lack of appropriate medical care and that Warden Salmonsen promised
him a transfer to California's Donovan State Prison due to his special needs and
hardships. (*Id.* at 13–14.) As argued by Warden Salmonsen, however, "[a]
difference of opinion between a physician and the prisoner—or between medical
professionals—concerning what medical care is appropriate does not amount to
deliberate indifference." *Snow*, 681 F.3d at 987.

And critically, McClanahan has not shown that Salmonsen either personally
participated in providing him inadequate medical care, or that there is a sufficient
causal connection between his conduct and any inadequate care that McClanahan
allegedly received. It is undisputed that Warden Salmonsen never communicated
to Dr. Rees that he should be indifferent to McClanahan's medical needs, or that he
should provide McClanahan with medical care that does not meet professional
standards. (Doc. 89 at ¶ 23.) Generalized statements regarding the role of a
facility supervisor are insufficient to establish supervisory liability under § 1983.

*See Thomas v. Swarthout*, 2016 WL 1359934, at *8 (E.D. Cal. Apr. 5, 2016)

("[T]he causal link between . . . [a supervisory] defendant and the claimed

constitutional violation must be specifically shown.").  Because Warden

Salmonsen did not personally participate in McClanahan's medical care, nor did

Warden Salmonsen direct any act or omission that injured him, McClanahan's

claim against Warden Salmonsen fails.

### C.    Qualified Immunity

Finally, Warden Salmonsen argues that should the Court find a

constitutional violation occurred, he would be entitled to qualified immunity

because he could not have known that McClanahan's disagreement with the MSP

medical staff was a constitutional violation.  *See Snow*, 681 F.3d at 987; *Estelle*,

429 U.S. at 107 (holding that an inmate's disagreement with a medical provider

does not subject the prisoner to cruel and unusual punishment in violation of the

Eighth Amendment).  Qualified immunity protects government officials from

liability for civil damages unless their conduct violates "clearly established

statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Plaintiffs bringing § 1983 claims

against individual officials must demonstrate that (1) a federal right has been

violated, and (2) the right was clearly established at the time of the violation.

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  "The qualified immunity standard

gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation and internal quotation marks omitted).

MSP's regular monitoring of McClanahan's melanoma was not medically inadequate and does not constitute an Eighth Amendment violation. The Court need not consider whether Warden Salmonsen is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (explaining that if the defendant's conduct did not violate a constitutional right, further analysis is unnecessary).

CONCLUSION

Based on the foregoing, IT IS ORDERED that Warden Salmonsen's motion for summary judgment (Doc. 87) is GRANTED.  The Clerk is directed to enter judgment in favor of Warden Salmonsen and close the case file.

DATED this 16th day of September, 2024.

Brian Morris, Chief District Judge
United States District Court